UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSUE CASTAÑEDA JUAREZ, et al., | CASE NO. C20-0700JLR-MLP |
| Petitioners-Plaintiffs, | REPORT AND RECOMMENDATION DENYING MOTION FOR CLASS CERTIFICATION |
| v. | |
| NATHALIE ASHER, et al., | |
| Respondents-Defendants. | |

## I.  INTRODUCTION

Before the court is Petitioner-Plaintiffs Jose Castañeda Juarez, Wilfredo Favela Avendaño, J.A.M, and Naeem Khan's (collectively, "Petitioners") motion for class certification (Mot. (Dkt. #21).) Respondent-Defendants Nathalie Asher, Matthew T. Albence, Steven Langford, and United States Immigration and Customs Enforcement's ("ICE") (collectively, "Respondents") oppose Petitioners' motion. (*See* Resp. (Dkt. #79).) The court has reviewed the submissions of the parties, the appropriate portions of the record, and the relevant

law. Being fully advised,[1] the court recommends Petitioners' motion for class certification be DENIED.

## II.  BACKGROUND

### A. Procedural Background

Petitioners are three[2] individuals held in civil detention by ICE at the Tacoma Northwest Detention Center ("NWDC")[3] in Tacoma, Washington. (*See* Pet. (Dkt. #1) ¶¶ 39-66.) On May 8, 2020, Petitioners filed their petition-complaint seeking a writ of habeas corpus or, in the alternative, injunctive relief against Respondents. On May 11, 2020, Petitioners filed a motion seeking "immediate release" from detention as they await adjudication of their immigration cases. (TRO Mot. at 7 (Dkt. #22).) The same day, Petitioners moved to certify a class of detainees at the NWDC at risk of serious health complications or death if infected with COVID-19, as determined by the Centers for Disease Control and Prevention ("CDC"). (Mot. at 2-3.) Having denied Petitioners' motion for a TRO on June 12, 2020, (*see* 6/12/20 Order (Dkt. #91)), the court will now address Petitioners' class certification motion.

### B. Proposed Class

Individual Petitioners seek to represent the following class:

> All individuals detained at the Northwest Detention Center who are age 60 years or older or have medical conditions that place them at heightened risk of severe illness or death from COVID-19 as determined by Centers for Disease Control and Prevention guidelines. Those medical conditions include:
>
> 1. Chronic kidney disease (e.g., receiving dialysis);
> 2. Chronic liver disease (e.g., cirrhosis and chronic hepatitis);

---

[1] The parties have requested oral argument (*see* Mot. at 1; Resp. at 1), but the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules LCR 7(b)(4).

[2] Respondents confirm that Petitioner J.A.M. was released, leaving only three named Petitioners in this action: Mr. Castañeda Juarez, Mr. Avedaño, and Mr. Khan. (Bostock Decl. (Dkt. #63) ¶ 79.)

[3] The NWDC is also referred to as the Northwest ICE Processing Center ("NWIPC"). (*See* Bostock Decl. ¶ 1.)

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 2

      3. Endocrine disorders (e.g., diabetes mellitus);
      4. Compromised immune system (immunosuppression) (e.g., receiving treatment such as chemotherapy or radiation, received an organ or bone marrow transplant and is taking immunosuppressant medications, taking high doses of corticosteroids or other immunosuppressant medications, HIV or AIDS);
      5. Metabolic disorders (e.g., inherited metabolic disorders and mitochondrial disorders);
      6. Heart disease (e.g., congenital heart disease, congestive heart failure, and coronary artery disease);
      7. Lung disease (e.g., asthma, chronic obstructive pulmonary disease (chronic bronchitis or emphysema), or other chronic conditions associated with impaired lung function or that require home oxygen);
      8. Neurological and neurologic and neurodevelopment conditions (including disorders of the brain, spinal cord, peripheral nerve, and muscle such as cerebral palsy, epilepsy (seizure disorders), stroke, intellectual disability, moderate to severe developmental delay, muscular dystrophy, or spinal cord injury);
      9. Current or recent pregnancy (in the last two weeks);
      10. Body mass index (BMI) greater than 40; and
      11. Hypertension.

(Mot. at 3 (citing Amon Decl. (Dkt. #3) ¶ 11).) For background, the court briefly recounts Petitioners' factual allegations.

      Mr. Castañeda Juarez is 36 years old and a citizen of Mexico. (Castañeda Juarez Decl. (Dkt. #8) ¶ 1.) Although his medical record lists a diagnosis of "mild intermittent asthma," Petitioners' expert witness concludes that Mr. Castañeda Juarez "would qualify for a diagnosis of moderate persistent asthma" based on the medications he takes to prevent daily asthma symptoms. (McKenzie Decl. (Dkt. #4) ¶ 27; *see also id.*, Ex. 2 at 5.) His medical records also list a diagnosis of mild aortic stenosis in February 2020, and a medical history of chronic asthma. (*Id.*) He is not eligible for a bond hearing because he is detained pursuant to 8 U.S.C. § 1231(a)(6),[4] but he will be eligible once detained for 180 days. *See Florez Tejada v. Godfrey*, 954 F.3d 1245 (9th Cir.

---

[4] A detainee held under this provision is "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6).

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 3

2020). ICE Health Services Corps identified Mr. Castañeda Juarez as higher risk, and he accepted ICE's offer to be housed in a unit at 37.8% capacity. (Bostock Decl. (Dkt. #63) ¶ 75.)

Mr. Favela Avendaño is 46 years old and a citizen of Mexico. (Favela Avendaño Decl. (Dkt. #7 ¶ 1.) He suffers from moderate persistent asthma and uses an inhaler twice a day. (*Id.* ¶ 4; McKenzie Decl. ¶ 26.) He is currently housed in a unit at 57.8% capacity. He was convicted of Driving Under the Influence in 2014 and arrested for DUIs in 2019 and 2020. (Bostock Decl. ¶ 76.) He is held under 8 U.S.C. § 1226(a) and therefore statutorily eligible for a bond hearing.

Mr. Khan is 47 years old, a citizen of Pakistan and a Lawful Permanent Resident of the United States. (Khan Decl. (Dkt. #9) ¶1.) He is detained and subject to removal based on his continued violation of a domestic violence no contact order. (Bostock Decl. ¶ 78; Khan Decl. ¶ 2.) An Immigration Judge granted him cancellation of removal for certain residents under 8 U.S.C. § 1229b(a), but DHS appealed the decision. Mr. Khan is held under 8 U.S.C. § 1226(a) while his appeal is pending. Mr. Khan manages his diabetes with oral medication (McKenzie Decl. ¶ 24), and is housed in a unit at 37.8% capacity.

### III. DISCUSSION

**A. Legal Standard**

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Federal Rule of Civil Procedure Rule 23(a), the party seeking certification must first demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 4

After satisfying the Rule 23(a) requirements, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Petitioners seek to certify a class under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Rule 23 "does not set forth a mere pleading standard." *Id.* at 350. Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350–51 (internal quotation omitted). "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotation omitted). Nonetheless, the ultimate decision regarding class certification "involve[s] a significant element of discretion." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

For the reasons set forth below, the court concludes that the proposed class does not meet the requirements of commonality under Rule 23(a) and uniform remedy under Rule 23(b)(2). The court therefore recommends that class certification be denied.

**B. Rule 23(a) Certification Requirements**

The court finds Petitioners' arguments for numerosity and adequacy well-founded, and Respondents only challenge the second and third requirements of Rule 23(a) certification:

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 5

commonality and typicality. (*See* Resp. at 12-18.) In light of its disposition of commonality, the court need not address typicality. *See Dukes*, 564 U.S. at 350 n.5 ("The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (quoting *Falcon*, 457 U.S. at 157 n.13).

The requirement of "commonality" is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 350. A contention is capable of class-wide resolution if "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "[W]hat matters to class certification. . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* This requirement is "construed permissively." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). Accordingly, "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.*; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

Here, Petitioners advance as their common legal question "whether their continued detention violates the Fifth Amendment." (Mot. at 19.) Specifically, Petitioners claim that their continued detention at the NWDC violates their Fifth Amendment substantive due process rights to (1) reasonably safe conditions of confinement and (2) conditions that do not amount to punishment. (Pet. ¶¶ 76-78.) Regarding remedy, Petitioners argue that release is the "only means" to protect their Fifth Amendment rights. (*Id.* ¶ 82.) For the reasons set forth below, the court finds

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 6

that differences among putative class members and the nature of their due process claims make this case ill-suited to class-wide resolution.

1. Risk Level From COVID-19

First, commonality is absent based on the individualized assessments necessary to determine which class members qualify as "high risk" under the CDC criteria. Consistent with other district courts addressing this question, the court agrees that differences in medical conditions and risks posed by COVID-19 do not necessarily defeat commonality. Even though detainees' underlying medical conditions are different, each putative class member with at least one of the CDC-recognized risk factors "share[s] a similar level of vulnerability to COVID-19" as someone at heightened risk of severe illness and death from the virus. *Fraihat v. U.S. Immigration & Customs Enf't*, No. ED-CV-191546JGBSHKX, 2020 WL 1932570, at *16 (C.D. Cal. Apr. 20, 2020); *see also Alcantara v. Archambeault*, No. 20-CV-0756 DMS (AHG), 2020 WL 2315777, at *5 (S.D. Cal. May 1, 2020) (Finding that different risk profiles "do[] not detract from the undisputed common feature of the subclass, which is that each member is at high risk.").

Here, however, Petitioners have not proposed a class where high risk from COVID-19 is an "undisputed common feature" of the class. *Cf.* Alcantra, 2020 WL 2315777, at *5. Some Petitioners' high-risk factors, like Mr. Avendaño and Mr. Khan, are easily ascertained from their medical records and corroborative expert testimony. Conversely, determining whether Mr. Castañeda Juarez is a "high risk" detainee is a fact-intensive inquiry requiring more extensive expert testimony and external evidence. (*See, e.g.*, Venters Decl. (Dkt. # 86) ¶¶ 33-36.) Mr. Castañeda Juarez's medical records maintained by Respondents report only "mild intermittent asthma." This is inconsistent with Petitioners' experts' diagnoses that Mr. Castañeda Juarez "would qualify for a diagnosis of moderate persistent asthma." (McKenzie Decl. ¶ 27; *see also*

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 7

Venters Decl. ¶ 34.) The issue is significant. As Petitioners concede, only moderate to severe asthma is denoted by the CDC as a high-risk condition. (*See* Reply at 7 ("CDC guidance specifies that "*moderate to severe asthma* . . . can lead individuals to face more severe consequences from COVID-19.") (citing Venters Decl. (Dkt. #86) ¶¶ 13, 17) (emphasis added).) Likewise, there is a question as to whether his heart condition of "mild aortic stenosis" qualifies him as "high risk" under the CDC criteria. Petitioners' expert witness maintains that "[t]he finding that this restriction is mild in nature does not mean that this is not a serious problem." (Venters Decl. ¶ 35.) Yet the record does not make clear whether Mr. Castañeda Juarez's particular condition falls into the CDC criteria for "heart disease."[5]

Petitioners argue that the ambiguity should not affect commonality because Respondents themselves offered Mr. Castañeda Juarez housing in a unit at 37.8% capacity based on his medical history. (Reply (Dkt. #84) at 5-6.) However, this is just one more fact to be considered in determining whether Mr. Castañeda Juarez is, in fact, a high-risk detainee—an issue more appropriately considered in later proceedings. The court finds that this more rigorous analysis required to determine whether he qualifies as "high risk" under one or more of the CDC's criteria undermines commonality.

By including detainees whose risk factors are not evident from their medical records, Petitioners have proposed a class that includes detainees whose elevated risk must be proven through more extensive expert testimony, their housing placement, or possibly other evidence

---

[5] The CDC's website referenced in Dr. Amon's declaration (*see* Amon Decl. (Dkt. #3) ¶11, n.13), which re-directs to an updated webpage, lists heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension conditions that qualify as "serious heart conditions and other cardiovascular and cerebrovascular diseases" that increase the risk of severe illness from COVID-19. *See People of Any Age with Underlying Medical Conditions*, CENTERS FOR DISEASE CONTROL & PREVENTION (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 8

apart from the conditions expressly listed in their health records. This requires the court, in some cases, to make a threshold determination as to whether certain detainees qualify as "high risk" under the CDC's criteria. The necessity of such individualized analyses to determine class membership defeats commonality. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (Finding commonality defeated where "an individualized case" must be made on behalf of each proposed class member to determine if they qualify as a member of the class).

2. Statutory Authority for Detention and Release Considerations

The court also finds commonality absent given that the putative class members are detained under different provisions of the Immigration and Nationality Act ("INA") with varying factual considerations of whether release is appropriate. Petitioners Khan and Favela Avendaño are detained under 8 U.S.C. § 1226(a) while Petitioner Castañeda Juarez is detained under 8 U.S.C. § 1231(a)(6). Each of them have varying criminal histories, ranging from no reported history to recent DUI convictions to violations of a no-contact order. (*See* Bostock Decl. ¶¶ 73, 76, 78.)

Here, Petitioners argue that nothing short of release can remedy their due process violations. (*See* Mot. at 23; *see also* Pet. ¶ 82 ("The only means to protect the Fifth Amendment rights of Plaintiffs and the proposed class is release. The severe risk to which they are being subjected cannot be abated if they remain at NWDC."); *see also* 5/27/20 Hrg. Tr. at 8:19-25 ("[O]ur position, to be clear, is that social distancing is in fact impossible at the Northwest Detention Center as a practical matter because of the enclosed environment for hundreds of people with its structural and operational limitations.").) However, Respondents maintain that ICE's discretion to release a detainee is constrained by the statutory provision under which the detainee is held. *See* Dkt. # 79 at 14-15. For example, provisions like Section 1226(c) require mandatory detention while others, like Section 1231(a)(6), provide for discretionary detention after a 90-day

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 9

removal period. *See* 8 U.S.C. §§ 1226(c); 1231(a)(6). Likewise, where a detainee is eligible for release, the outcome of assessments on flight risk and danger to the community determine whether release is appropriate. 8 C.F.R. § 236.1(c)(8).

The court finds proposed class members' varying detention statuses and different factors governing whether release is appropriate make it impossible, in this particular case, for the court to arrive at "common answers" suited for class-wide resolution. *See Dukes*, 564 U.S. at 350. First, Petitioners' "failure to protect" claim under the Due Process Clause requires the court to evaluate government conduct under an objective deliberate indifference standard. *See Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). Under this standard, the defendant's conduct "must be objectively unreasonable, *a test that will necessarily turn on the facts and circumstances of each particular case*." *Id.* (emphasis added) (internal quotations omitted). To show such a state of mind, a plaintiff must provide evidence that the defendant failed to take "reasonable available measures" to abate a plaintiff's substantial risk of suffering serious harm. *Id.* Because ICE's statutory authority to detain or release individual class members is restrained and varied, it necessarily affects the court's analysis of whether the agency failed to take reasonable measures to abate certain detainees' risk of harm from COVID-19.

Petitioners' second due process claim—confinement in conditions that amount to punishment—is likewise fact-intensive and dependent on the circumstances of each detainee's detention. To analyze Petitioners' claim that conditions at the NWDC amount to punishment, the court must determine whether "the challenged governmental action is not rationally related to a legitimate governmental objective or . . . is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2373–74 (2015) (relying on *Bell v. Wolfish*, 441 U.S. 520 (1979)). Because the Government's interest in continued detention is higher for those cases where detention

is mandatory, the excessiveness of continued detention relative to the governmental objective varies depending on the statutory basis for detention and the detainee's criminal history. *See C.G.B. v. Wolf*, No. 20-CV-1072 (CRC), 2020 WL 2935111, at *23 (D.D.C. June 2, 2020) ("Congress has recognized that the Government's interest in detaining noncitizens who have been convicted of certain crimes or are subject to certain proceedings is so strong that it has made their detention mandatory. *Compare* 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV), 1226(c)(1) & 1231(a)(2) (mandating detention), *with id.* § 1226(a) (committing detention or parole determinations to DHS's discretion).") Again, part of the Fifth Amendment due process analysis turns on the Government's interests in continued detention, which is implicated by the statutory authority for detention and the detainee's criminal history. In light of these fact-dependent analyses, the court cannot find commonality in the proposed class of detainees.

Petitioners' arguments to the contrary are unavailing. First, Petitioners cite instances where courts have ordered a detainee's release in light of the COVID-19 crisis, despite the fact that they were held under a mandatory detention statute. (Reply at 8 (citing *Pimentel-Estrada v. Barr*, No. C20-495 RSM-BAT, --- F. Supp. 3d ---, 2020 WL 2092430, at *18 (W.D. Wash. Apr. 28, 2020); *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1812850, at *2 (N.D. Cal. Apr. 9, 2020); *Basank v. Decker*, No. 20 Civ. 2518 (AT), 2020 WL 1481503, at *6 (S.D.N.Y. Mar. 26, 2020).) However, these cases merely support the proposition that a court has authority to order release of a detainee subject to mandatory detention, should it find such relief appropriate under the circumstances. These cases are inapposite to the question at hand, which is whether disposition of Petitioners' Fifth Amendment claims is suited to class-wide resolution.

Petitioners also cite to recent cases where courts granted certification of a class of high-risk detainees held under different statutory authorities, arguing that the court should take the same

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 11

approach here. (Reply at 8-9 (citing *Rodriguez Alcantara*, 2020 WL 2315777, at *5; *Zepeda Rivas*, 2020 WL 2059848, at *1; *Savino*, 2020 WL 1703844, at *7).) The circumstances guiding these other courts to grant certification do not compel the same result in this case. In *Alcantra*, the court considered certification of a class of high-risk detainees at a facility that was "in the midst of the worst outbreak of COVID-19 in any ICE detention facility in the country." 2020 WL 2315777, at *5 (S.D. Cal. May 1, 2020). In light of the urgent and substantial risk posed to detainees held at Otay Mesa, the *Alcantra* court found that the appropriateness of a more expedient class-based resolution was not overridden by individual differences between detainees. *Id.* (Concluding that "arguments about whether each subclass member is suitable for release, and that conditions should be placed on each subclass members' release . . . do not defeat a finding of commonality."). *Id.* This court, in contrast, is not analyzing Petitioners' Fifth Amendment claims in the context of an active outbreak and is not compelled to reach the same conclusion. (*See* 6/12/20 Order at 16 ("Respondents' measures have thus far been effective at preventing a COVID-19 outbreak and containing the virus' spread.").)

Likewise, the courts in *Zepeda Rivas* and *Savino* found commonality satisfied where the proposed classes sought injunctive relief that only addressed conditions within the facility. *See Zepeda Rivas*, 2020 WL 2059848, at *1 ("[T]his lawsuit is not about whether any particular person should be released; it is about the conditions of confinement at the facilities. . . . all class members would benefit from the same remedy—an order requiring social distancing at Yuba and Mesa Verde.") (internal quotations omitted); *see also Savino*, 2020 WL 1703844, at *7 ("The question is not so much whether any particular Detainee should be released . . . Rather, the question is whether the government is taking reasonable steps to identify those Detainees who may be released . . . .") Accordingly, the *Zepeda Rivas* and *Savino* courts found commonality satisfied where the

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 12

claims of the proposed class presented the common question of whether the government must modify conditions within the facility to remedy due process violations. (*See, e.g.*, *id.* ("[T]he admittedly significant variation among the Detainees does not defeat commonality . . . a common question of law and fact in this case is whether the government must modify the conditions of confinement—or, failing that, release a critical mass of Detainees—such that social distancing will be possible . . . ."))

Here, in contrast, Petitioners present a different "common question" based on their position that nothing short of release can remedy all members' due process violations. (*See* Mot. at 23; *see also* Pet. ¶ 82.) Accordingly, the common question presented here is whether Respondents must release high-risk detainees to remedy their substantial risk of serious harm posed by COVID-19. As other courts have acknowledged, the question of release is "a matter as to which the various individuals are surely differently situated." *Savino*, 2020 WL 1703844, at *7.

For these reasons, the court finds that the putative class fails to meet the commonality requirements of Rule 23(a).

### C. Rule 23(b)(2) Certification Requirements

Petitioners have likewise failed to satisfy the requirements for class certification under Rule 23(b)(2). Certification under Rule 23(b)(2) requires uniformity of remedy. *See Dukes*, 564 U.S. at 360 (holding that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."). Consequently, a court may only certify a class that is entitled to an "indivisible" remedy. *Id.*

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 13

As an initial matter, the Supreme Court has cautioned against issuing Rule 23(b)(2) remedies in situations that involve fact-dependent constitutional determinations. *See Jennings*, 138 S. Ct. at 852 (suggesting that Rule 23(b)(2) certification was improper because the individual due process claims at issue are "flexible . . . and call[ ] for such procedural protections as the particular situation demands"). Considering the individualized inquiries involved in analyzing each class members' Fifth Amendment claims, the court cannot conclude that a class-wide declaration is feasible here.

Furthermore, given Petitioners' position that nothing short of release will remedy the due process violations, the court is not persuaded that the proposed class is entitled to an indivisible remedy. While some class members may be entitled to immediate release, determining whether release is appropriate across the class would require case-by-case considerations of factors such as flight risk, danger to the community, and possible conditions of release. Indeed, an immigration judge previously denied Petitioner Khan's bond on the basis that he was deemed both a flight risk and a danger to the community. (*See* Bostock Decl. ¶ 78.) Petitioners concede that after the court determines that Respondents violated Petitioners' Fifth Amendment rights, it may need to "direct a process" to determine which class members are eligible for the class-wide injunctive relief. (*See* Reply at 10.) The necessity of this individualized process contravenes the purpose of certifying a class under Rule 23(b)(2), which is to issue "an indivisible injunction *benefiting all its members at once* . . . ." *Dukes*, 564 U.S. at 362 (emphasis added).

None of the cases Petitioners cite compel a contrary result, as the relief sought in those cases was a single remedy that applied uniformly to all class members. In *Parsons*, the Ninth Circuit rejected defendants' argument "that each inmate's alleged injury is amenable only to individualized remedy" and found that a uniform remedy was possible, given that "every inmate

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 14

in the proposed class is allegedly suffering the same (or at least a similar) injury and *that injury can be alleviated for every class member by uniform changes* in statewide ADC policy and practice." *Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014) (emphasis added). Similarly, in *Rodriguez v. Hayes*, petitioners challenged the Government's practice of prolonged detention of detainees without providing a bond hearing, and the court ordered uniform relief in the form of bond hearings for all class members that had been detained longer than six months. *See Rodriguez*, 591 F.3d at 1126. *See also B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019) (affirming certification of 23(b)(2) class even though specifics of uniform injunction would be determined after further fact-finding).

Petitioners also contend that [n]umerous courts in this and other circuits have certified classes requesting similar or identical relief to the putative class in this case," (Reply at 10), but none of the cited cases addressed the same disparate injunctive relief requested here. Most of these cases only addressed injunctive relief that remedied conditions within the facility, such as mandated social distancing. *See, e.g.*, *Zepeda Rivas*, 2020 WL 2059848, at *1; *Savino*, 2020 WL 1703844, at *7; *Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, No. 20-CV-453-LM, 2020 WL 2113642, at *3 (D.N.H. May 4, 2020). Although the court in *Ahlman v. Barnes* certified a class of inmates under Rule 23(b)(2) seeking class-wide release or mitigation of the dangers of COVID-19 within the jail, it ultimately declined to grant class-wide release on the basis that release could not be uniformly granted to all class members. No. SACV20835JGBSHKX, 2020 WL 2754938, at *13 (C.D. Cal. May 26, 2020) ("There are myriad risks of releasing incarcerated individuals without any consideration of crime committed, propensity to violence, or flight risk.").

Here, in contrast, Petitioners seek only class-wide release, either immediately or after individualized review to identify appropriate release conditions. (*See* Reply at 11-12 ("[I]njunctive

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 15

and declaratory relief would resolve this question on a class-wide basis, by declaring such detention unconstitutional and ordering release—or, on an interim basis, ordering review of class members and release under appropriate conditions.").) Here, because of the possibility that "not every class member would be released or would ultimately benefit from the ordered relief," (Reply at 11), the court finds that such relief fails the uniform remedy requirement of Rule 23(b)(2), thereby warranting denial of Petitioners' class certification motion.

## IV.   CONCLUSION

For the foregoing reasons, the court recommends that Petitioners' motion for class certification (dkt. #21) be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on July 21, 2020.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable James L. Robart.

Dated this 6th of July, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION DENYING CLASS CERTIFICATION – 16