UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSUE CASTANEDA JUAREZ, et al., | CASE NO. C20-0700JLR-MLP |
| Petitioners- Plaintiffs, | ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND DENYING PETITIONERS' MOTION FOR CLASS CERTIFICATION |
| v. | |
| NATHALIE ASHER, et al., | |
| Respondents-Defendants. | |

## I.   INTRODUCTION

Before the court is Magistrate Judge Michelle L. Peterson's report and recommendation ("R&R") on Petitioners-Plaintiffs Josue Castaneda Juarez, Wilfredo Favela Avendano, and Naeem Khan's (collectively, "Petitioners")[1] motion for class certification.  (*See* R&R (Dkt. # 97); *see also* MCC (Dkt. # 21).)  After Magistrate Judge

//

---

[1] Petitioner J.A.M. was released (Bostck Decl. (Dkt. # 63) ¶ 79), leaving only the three Petitioners named above.

ORDER - 1

1  Peterson issued her R&R denying Petitioners' motion, Petitioners' timely filed

2  objections.  (*See* Obj. (Dkt. # 105).)  Respondents-Defendants United States Immigration

3  and Customs Enforcement ("ICE"), ICE Deputy Director and Senior Official Performing

4  the Duties of the Director, Matthew T. Albence, ICE Seattle Field Office Director

5  Nathalie Asher (collectively, "the Government"), and Northwest ICE Processing Center

6  Facility Administrator Stephen Langford (collectively, "Respondents") filed a response to

7  Petitioners' objections in support of the R&R.  (*See* Resp. (Dkt. # 106); *see also* Joinder

8  (Dkt. # 107) at 1 (stating that Administrator Lanford "concurs with [the Government's]

9  objections to [Petitioners'] objections to the . . . [R&R]").)  Finally, Petitioners filed a

10  notice of supplemental authority related to the report and recommendation.  (Notice (Dkt.

11  # 111).)  The court has considered Petitioners' motion for class certification, Magistrate

12  Judge Peterson's R&R denying that motion, the parties' submissions in support of and in

13  opposition to Petitioners' motion and the R&R, the relevant portions of the record, and

14  the applicable law.  Being fully advised,[2] the court ADOPTS IN PART Magistrate

15  Peterson's R&R and DENIES Petitioners' motion for class certification as detailed

16  below.

17  //

18  //

19  //

20  //

21  _____

    [2] Petitioners ask for oral argument on their objections to the R&R.  (*See* Obj. at title
22  page.)  The court, however, does not consider oral argument to be helpful to its disposition of
    Petitioners' objections and so denies the request.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

## II.   PROCEDURAL AND FACTUAL BACKGROUND[3]

Petitioners are three individuals held by ICE at the Northwest Detention Center ("NWDC"), in Tacoma, Washington, who seek a writ of habeas corpus or, in the alternative, injunctive relief against Respondents requiring their release from civil detention.  (*See* Pet. (Dkt. # 1) ¶¶ 39-66.)  Petitioners all suffer from conditions that placed them at heightened risk of death or severe illness from COVID-19.  (McKensie Decl. (Dkt. # 4) ¶¶ 24, 26-27, Ex. 2.)  Mr. Castaneda is not eligible for a bond hearing because he is detained pursuant to 8 U.S.C. § 1231(a)(6), but he will be eligible once he is detained for 180 days, *see Flores Tejada v. Godfrey*, 954 F.3d 1254 (9th Cir. 2020).  Mr. Favela Avendano and Mr. Khan are detained under 8 U.S.C. § 1226(a) and are therefore both statutorily eligible for bond hearings.

On May 11, 2020, Petitioners filed a motion for a temporary restraining order ("TRO") requiring their "expedited" and "immediate release" from detention while they await adjudication of their immigration cases.  (*See* TRO Mot. (Dkt. # 22) at 3.)  After obtaining additional information concerning Respondents' ability to provide COVID-19 testing to detainees at the NWDC (*see* OSC (Dkt. # 78); *see also* OSC Resp. (Dkt. # 78); Lippard Decl. (Dkt. # 80)), the court denied Petitioner's TRO motion.  (*See* 6/12/20 Order (Dkt. # 91)).

//

//

---

[3] Because the facts and procedural background of this case are well known to the parties and covered in detail by Magistrate Judge Peterson (*see* R&R at 2-4), the court offers only a brief summary here.

1    On the same day that Petitioners filed their TRO motion, they also filed a motion

2    to certify a class of "[a]ll individuals detained at the [NWDC] who are age 60 years or

3    older or have medical conditions that place them at heightened risk of severe illness or

4    death from COVID-19 as determined by Center for Disease Control and Prevention

5    [('CDC')] guidelines."  (*See* MCC at 3; *see also* Pet. ¶ 64.)  The class definition also lists

6    11 specific medical conditions the CDC identifies as placing individuals at risk of severe

7    illness or death from COVID-19.  (*See* Pet. ¶ 64; MCC at 3 (citing Amos Decl. (Dkt. # 3)

8    ¶ 11 (listing the medical conditions the CDC has identified as placing individuals at

9    heightened risk)).)

10    The relief Petitioners seek includes a declaration that their "continued civil

11    immigration detention at [the] NWDC . . . violates the Due Process Clause" and an

12    injunction "ordering [Respondents] to release [Petitioners] and those similarly

13    situated . . . on the ground that their continued detention violates the Due Process

14    Clause."  (Pet. at 31; *see also id.* ¶ 6 ("This Court has . . . the obligation to order

15    [Respondents] to comply with the Fifth Amendment and release [Petitioners] and the

16    members of the proposed class from civil detention."); MCC at 23 (stating that

17    Petitioners seek a declaration that their continued confinement violates the Due Process

18    Clause and an injunction "remedying those practices by providing for the expedited

19    release of medically vulnerable individuals.").)  Indeed, Petitioners allege that

20    "mitigation at [the] NWDC is impossible" and release from detention "is the only

21    effective means for them to avoid infection by a lethal virus with no vaccine or cure" and

22    to protect their Fifth Amendment rights.  (*Id.* ¶¶ 8, 82.)

ORDER - 4

1    On July 6, 2020, Magistrate Judge Peterson entered an R&R denying Petitioners'

2    motion for class certification.  (*See* R&R.)  Respondents did not challenge the Federal

3    Rule of Civil Procedure 23(a) requirements of numerosity and adequacy,[4] and Magistrate

4    Judge Peterson found Petitioners' showing concerning those required elements to be

5    "well-founded."  (*See* R&R at 5.)  Magistrate Judge Peterson nevertheless recommended

6    denying Petitioners' motion for class certification because she concluded that Petitioners

7    failed to demonstrate (1) the "commonality" requirement of Rule 23(a)(2)[5] (*see* R&R at

8    5-13); and (2) the uniform remedy requirement under Rule 23(b)(2)[6] (*see* R&R at

9    13-16).[7]  Petitioners timely filed their objections to Magistrate Judge Peterson's R&R.

10    (*See* Obj.)  The court now considers Petitioners' objections.

## III.    ANALYSIS

**A.    Legal Standards**

13    A district court has jurisdiction to review a Magistrate Judge's R&R on dispositive

14    matters.  *See* Fed. R. Civ. P. 72(b).  "The district judge must determine de novo any part

15    of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P.

---

[4] *See* Fed. R. Civ. P. 23(a)(1) (requiring that "the class is so numerous that joinder of all members is impracticable"); Fed. R. Civ. P. 23(a)(4) (requiring that "the representative parties will fairly and adequately protect the interests of the class.").

[5] *See* Fed. R. Civ. P. 23(a)(2) (requiring "there are questions of law or fact common to the class").

[6] *See* Fed. R. Civ. P. 23(b)(2) (requiring that "that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole").

[7] Magistrate Judge Peterson did not reach the issue of typicality under Rule 23(a).  (*See* R&R at 6); *see also* Fed. R. Civ. P. 23(a)(3) (requiring "the claims or defenses of the representative parties are typical of the claims or defenses of the class").

72(b)(3).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").  The court reviews de novo those portions of the R&R to which specific written objection is made.  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Under Rule 23(a), the party seeking certification must first demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(a)'s four subparts are generally referred to as the requirements of numerosity, commonality, typicality, and adequacy of representation, respectively.  These four requirements "effectively limit the class to those fairly encompassed by the named plaintiff's claims."  *Dukes*, 564 U.S. at 349.

Next, the party seeking certification must demonstrate that the proposed class satisfies at least one of the three requirements listed in Rule 23(b).  *Id.*  Here, Petitioners' rely on Rule 23(b)(2) to justify class certification, which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class,

1  so that the final injunctive relief or corresponding declaratory relief is appropriate

2  respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "[T]he key to the [Rule

3  23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy

4  warranted."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) (quotation

5  marks omitted).  Indeed, "Rule 23(b)(3) applies only when a single injunction or

6  declaratory judgment would provide relief to each member of the class."  *Dukes*, 564

7  U.S. at 360.

8  **B.      Rule 23(b)(2) Certification**

9          As discussed below, the court overrules Petitioners' objections to and adopts

10  Magistrate Judge Peterson's conclusion that Petitioners failed to demonstrate a uniform

11  remedy as is required for Rule 23(b)(2) class certification.  As a result, the court need not

12  consider whether to adopt Magistrate Judge Peterson's Rule 23(a)(2) analysis concerning

13  commonality.[8]  Further, because the court adopts the portion of the R&R concluding that

14  Petitioners failed to show that they qualify for class certification under Rule 23(b)(2), the

15  court also denies Petitioners' motion for class certification.

16          Central to the court's conclusion adopting Magistrate Judge Peterson's

17  recommendation concerning Rule 23(b)(2) is Petitioners' allegations that "risk mitigation

18

19          [8] To the extent that Federal Rule of Civil Procedure 72(b) requires the court to determine
    de novo to the portion of Magistrate Judge Peterson's R&R concerning her analysis of
20  commonality under Rule 23(a)(2), *see* Fed. R. Civ. P. 72(b)(3) ("The district judge must
    determine de novo any part of the magistrate judge's disposition that has been properly objected
21  to."); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination
    of those portions of the report or specified proposed findings or recommendations to which
22  objection is made."), the court declines to adopt this portion of the R&R solely on grounds that it
    is unnecessary to the disposition of Petitioners' motion for class certification.

at [the] NWDC is impossible" and an injunction requiring their immediate release is "the *only* effective means" for them to avoid infection by COVID-19 and that the "*only* means to protect [their] . . . Fifth Amendment rights." (*See* Pet. ¶¶ 8, 82 (italics added).) Yet, as Magistrate Judge Peterson concluded, "[w]hile some members may be entitled to immediate release, determining whether release is appropriate across the class would require case-by-case considerations of factors such as flight risk, danger to the community, and possible conditions of release." (R&R at 14.) Accordingly, Magistrate Judge Peterson concluded that Petitioners had not established that the proposed class was entitled to an indivisible remedy. (*Id.*)

Because Petitioners allege that immediate release is the only injunctive relief that will effectively remedy the constitutional violation, their reliance on *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010), and *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), in objecting to the R&R is misplaced. (*See* Obj. at 10-12.) In *Rodriguez*, the uniform practice from which the petitioner sought relief was the government's practice of prolonging an alien's detention during immigration proceedings for more than six months without a bond hearing. 591 F.3d at 1126. The indivisible injunctive relief sought by the petitioner and his putative class was not for immediate release but rather for the provision of a bond hearing to determine whether release was an available remedy. *Id.* at 1111 ("Petitioner requests injunctive and declaratory relief providing individual bond hearings to all members of the class."). Thus, in *Rodriguez*, it did not matter whether some class members might be entitled to release while others might not be because what they sought was merely the uniform provision of a hearing. *See id.* at 1126 (The proposed members

1   of the class each challenge [the government's] practice of prolonged detention without

2   providing a bond hearing and seek as relief a bond hearing . . . . The particular statutes

3   controlling class members' detention may impact the viability of their individual claims

4   for relief, but do not alter the fact that relief from a single practice is requested by all

5   members.").  In contrast, Petitioners have not asked for a hearing of any sort.  (*See*

6   *generally* Pet.)  Instead, they seek immediate release.  (*See id.* ¶¶ 8, 82.)  As Magistrate

7   Judge Peterson correctly concluded, "[c]onsidering the individualized inquires involved

8   in analyzing each class members' Fifth Amendment claims," and "given Petitioners'

9   position that nothing short of release will remedy the due process violations," the

10  proposed class would not be "entitled to an indivisible remedy."  (R&R at 14.)

11          In *Parsons*, the plaintiffs were state prisoners who complained that serious

12  systemic deficiencies in the conditions of their confinement in isolation cells and in the

13  provision of privatized medical, dental, and mental health services violated their Eighth

14  Amendment rights.  754 F.3d at 662.  In the course of concluding that the district court

15  did not abused its discretion in determining that the plaintiffs had satisfied the Rule

16  23(b)(2) requirements, the Ninth Circuit noted that the plaintiffs requested an injunction

17  requiring defendants "to develop and implement, as soon as practical, a plan to eliminate

18  the substantial risk of serious harm that [the plaintiffs] suffer due to [the defendants']

19  inadequate medical, mental health, and dental care, and due to [the defendants'] isolation

20  policies."  *Id.* at 687.  The court specifically noted that the requested remedy "'would not

21  lie in providing specific care to specific inmates,' but rather 'the level of care and

22  resources would be raised for all inmates.'"  *Id.*  Thus, if successful, the proposed

ORDER - 9

1    injunction addressing the implicated policies and practices would "prescribe a standard of

2    conduct applicable to all class members."  *Id.*  Petitioners here complain similarly to the

3    *Parsons* plaintiffs that Respondents' policies and practices related to COVID-19 are

4    inadequate and violate the constitution.  (*See* Pet. ¶¶ 43-58.)  That, however, is where the

5    similarities with *Parsons* end.  In contrast to the prisoners in *Parsons*, who sought an

6    injunction requiring the defendants to implement a plan to eliminate the risk caused by

7    the defendants' various medical and other policies, *see* 754 F.3d at 687, Petitioners here

8    insist that COVID-19 "risk mitigation at [the] NWDC is impossible" (*id.* ¶ 82) and "the

9    only effective remedy is release" (*id.* ¶ 63).  As noted above, because not all class

10   members may be eligible for immediate release, the court cannot conclude that

11   Petitioners seek an indivisible remedy as required under Rule 23(b)(2) certification.[9]

12       Only in their reply memorandum in support of their class certification motion do

13   Petitioners first retreat from their insistence that immediate release is the only means to

14

15   _____

         [9] Petitioners also argue that the declaration they seek provides the necessary basis for
     Rule 23(b)(2) class certification.  (*See* Obj. at 10 ("Petitioners' request for declaratory relief—i.e.
16   a declaration that [the] conditions of confinement for medically vulnerable ICE individuals held
     at the NWDC violate their right to due process—can be applied class-wide.").)  However, in their
     complaint, Petitioners do not seek a declaration concerning their "conditions of confinement" but
17   rather ask the court to declare "that Defendants' continued civil immigration detention at [the]
     NWDC of individuals at increased risk for severe illness or death from COVID-19 violates the
18   Due Process Clause."  (Pet. at 31.)  Thus, it is Petitioners' continued detention that allegedly
     creates the constitutional violation here.  The implicit requirement of this declaration would be to
19   mandate release—not to create policies that would mitigate the COVID-19 risks or procedures to
     assess Petitioners' for possible release.  Indeed, as noted above, Petitioners specifically allege
20   that any injunction directed at policies to mitigate the risks of COVID-19 at the NWDC would be
     ineffective.  (*See* Pet. ¶ 82 ("[R]isk mitigation at [the] NWDC is impossible.").)  Accordingly,
21   the court agrees with Magistrate Judge Peterson that due to "the individualized inquiries
     involved in analyzing each class members' Fifth Amendment claims, . . . a class-wide
22   declaration is not feasible here"—at least not as pleaded in Petitioners' complaint.  (*See* R&R at
     14.)

ORDER - 10

1    protect them from COVID-19 and to safeguard their Fifth Amendment rights.  (*See* Reply

2    (Dkt. # 84) at 8-11.)  For the first time, Petitioners argue that immediate release may not

3    be required but only "a process by which a class-wide constitutional violation may be

4    remedied" or in the "interim," a "review of class members and release under appropriate

5    conditions."  (*Id.* at 9.)  Petitioners repeat this position in their objections to Magistrate

6    Judge Peterson's R&R.  (*See* Obj. at 10-12.)  They assert that they "have proposed

7    multiple forms of relief appropriate or class-wide certification" (*id.* at 10), including an

8    injunction "to remedy [the NWDC's allegedly unconstitutional] . . . policies and practices

9    *with a process* for the expedited release of medically vulnerable individuals" or an

10   "injunction *directing a process* by which a class-wide constitutional violation may be

11   remedied" (*see id.* (italics added)).  Indeed, they argue that "[t]here are many processes

12   that would benefit all class members."  (*Id.* at 12.)  But no such allegations appear in their

13   complaint.  (*See generally* Pet.)  Indeed, as detailed above, they insist in their complaint

14   that "risk mitigation at the NWDC is impossible" and expressly state that the sole means

15   of protecting their health and constitutional rights is not a "process" to determine whether

16   release or other mitigation is required, but an injunction requiring immediate release.  (*Id.*

17   ¶¶ 8, 82.)

18          Although the type of injunction described by Petitioners in their reply

19   memorandum and their objection to the R&R may be applicable on a class-wide basis

20   and therefore eligible for certification under Rule 23(b)(2),[10] Petitioners did not plead any

21

22          [10] Although the court recognizes this possibility, the court makes no such determination
     in the context of this order.

ORDER - 11

1   such injunction here. (*See generally* Pet.) Indeed, they alleged that any mitigation short

2   of the release of all class members would be inadequate. (*See* Pet. ¶ 82 ("[R]isk

3   mitigation at [the] NWDC is impossible.").) In any event, the court need not consider

4   either facts or argument raised for the first time in a reply brief and will not do so here.

5   *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not

6   consider arguments raised for the first time in a reply brief."); *In re China Intelligent

7   Lighting & Electronics, Inc. Sec. Litig.*, No. CV 11-2768 PSG SSX, 2012 WL 3834815,

8   at *4 (C.D. Cal. Sept. 5, 2012) ("The Court will not address new arguments raised for the

9   first time in a reply brief."); *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117,

10  1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or

11  different legal arguments in the reply brief than those presented in the moving papers.").

12  If Petitioners wanted the court to consider injunctions other than the specific one they

13  pleaded in their complaint for purposes of Rule 23(b)(2) certification, then, at a

14  minimum, they should have so argued in their motion and not left the issue to their

15  reply.[11]

16

17      [11] Citing *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019),
    Petitioners also argue that they do not need to provide specifics concerning the nature of the
18  injunctive relief they request at the class certification stage; instead, they assert that the "general
    contours of an injunction that would provide relief to the whole class" is all that is required.
    (Obj. at 12.) Petitioners reliance on *B.K.* is misplaced. In *B.K.* the defendants argued that the
19  plaintiffs "failed to provide a specific injunction that could satisfy Rule 23(b)(2)." 922 F.3d at
    972. In response, the *B.K.* court held that all that was necessary to satisfy Rule 23(b)(2) was "the
20  general contours" of an injunction that could provide relief to the whole class. *Id.* Here,
    however, Petitioners have not alleged a generalized injunction that could "be given greater
21  substance and specificity at an appropriate stage in the litigation," *id.*, but one that is very
    specific requiring Respondents to immediately release class members from detention and nothing
22  less. (*See* Pet. ¶¶ 8, 82.) Indeed, Petitioners have specifically alleged that "risk mitigation at
    [the] NWDC is impossible." (*Id.* ¶ 82.) Thus, here, the issue is not that Petitioners' description

1      Finally, although it might be possible for the court to *sua sponte* craft an

2   injunction modelled after the *Rodriguez* or *Parsons* injunctions that passes Rule 23(b)(2)

3   muster, the court declines Petitioners' implicit invitation to do so here.  (*See* Obj. at 12

4   ("For example, the Court could issue injunctive relief imposing a presumption of release

5   within a time certain that allows Respondents to seek individual custody hearings for

6   those class members who present extraordinary circumstances.").)  This litigation is still

7   in early stages.  Indeed, the court has yet to enter a scheduling order.  (*See generally*

8   Dkt.)  Accordingly, any deadline related to amending pleadings has not yet been set—let

9   alone expired.  Further, the presumptive deadline for filing class certification motions

10   does not expire until November 4, 2020, and even then it may be extended for good

11   cause.  *See* Local Rules W.D. Wash. LCR 23(i)(3) ("Within one hundred eighty days

12   after the filing of a complaint in a class action, unless otherwise ordered by the court or

13   provided by statute, the plaintiff shall move for a determination under Fed. R. Civ. P.

14   23(c)(1), as to whether the case is to be maintained as a class action.").  In any event, the

15   Petitioners are in a much better position than the court to craft a general remedy that

16   meets the strictures of Rule 23(b)(2), if they deem such an amendment to be

17   appropriate.[12]

18

19   ───────────────────

20   of the injunctive relief they seek is too generalized to qualify for Rule 23(b)(2) certification, but that it is so specific that they have pleaded themselves out of such certification.  The injunction that they request simply cannot be implemented indivisibly or in manner that would provide relief to whole class.

21

22      [12] The court makes no ruling concerning the propriety of any amendment to Petitioners' complaint in the context of this order.

1    In summary, the court agrees with Magistrate Judge Peterson that Petitioners

2    failed to satisfy the requirements of Rule 23(b)(2) for an indivisible, uniform remedy that

3    would provide relief to the whole class.  Accordingly, the court overrules Petitioners'

4    objections, adopts the portion of Magistrate Judge Peterson's R&R addressing the

5    strictures of Rule 23(b)(2), and denies Petitioners' motion for class certification.[13]

## IV.    CONCLUSION

7    For the reasons stated above, the court:

8    (1) ADOPTS the portion of the Report and Recommendation concerning

9       Petitioners' failure to demonstrate the requirements of Federal Rule of Civil

10      23(b)(2) (*see* Dkt. # 97 at 13-16); and

11   (2) DENIES Petitioners' motion for class certification (Dkt. # 21) as described

12      herein.

13   The Clerk is directed to send copies of this order to the parties and to Magistrate

14   Judge Peterson.

15   Dated this 25th day of September, 2020.

JAMES L. ROBART
United States District Judge

---

[13] The court's denial of Petitioners' motion for class certification is without prejudice to refiling such a motion in a manner consistent with the court's rulings herein.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

ORDER - 14