1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILFREDO FAVELA AVENDAÑO, *et al.*,

               Petitioner-Plaintiffs,

      v.

NATHALIE ASHER, *et al.*,

            Respondent-Defendants.

Case No. C20-700JLR-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Before the court is Petitioner-Plaintiffs Wilfredo Favela Avendaño, J.A.M, and Naeem Khan's (collectively, "Petitioners") second motion for class certification. (Mot. (Dkt. # 134).) Respondent-Defendants Nathalie Asher, Matthew T. Albence, Steven Langford, and United States Immigration and Customs Enforcement's ("ICE") (collectively, "Respondents") oppose Petitioners' motion (Resp. (dkt. # 156)) and Petitioners submitted a Reply (Reply (dkt. # 164)). The court has reviewed the submissions of the parties, the appropriate portions of the record, and

1  the relevant law. Being fully advised, the court recommends Petitioners' motion for class

2  certification be GRANTED.[1]

3                              **II.    BACKGROUND**

4      **A.  Procedural Background**

5          Petitioners are individuals either currently or previously held in civil detention by ICE at

6  the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. On May 8, 2020,

7  Petitioners filed their initial petition and complaint seeking a writ of habeas corpus and

8  injunctive and declaratory relief against Respondents. (*See generally* Pet. (Dkt. # 1).) Petitioners

9  argued they are "vulnerable to serious medical complications from COVID-19 and are at risk of

10  serious illness and death so long as they are held in detention" due to their medical conditions.

11  (*Id.* at ¶ 95.) Petitioners claimed that their continued detention violated their Fifth Amendment

12  substantive due process rights to: (1) reasonably safe conditions of confinement; and (2)

13  conditions that do not amount to punishment. (*Id*. at ¶¶ 76-78.) Petitioners argued release was the

14  "only means" to protect their Fifth Amendment rights. (*Id.* at ¶ 82.)

15          On May 11, 2020, Petitioners moved to certify a class of detainees at the NWIPC at risk

16  of serious health complications or death if infected with COVID-19, as determined by the

17  Centers for Disease Control and Prevention ("CDC"). (Dkt. # 21 at 2-3.) In support of their

18  motion, Petitioners argued social distancing and proper hygiene needed to stop the spread of

19  COVID-19 are impossible to practice at NWIPC. (*Id.* at 5-11.) Petitioners further argued

20  Respondents had not released a significant number of detainees, had not taken measures to

21  protect the medically vulnerable, and had not adequately tested for possible COVID-19

22  outbreaks. (*Id.*)

23  _____

[1] Petitioner's requested oral argument (Mot. at 1), however, the court finds oral argument unnecessary to
resolve the instant motion.

On July 6, 2020, the court submitted a Report and Recommendation, recommending Petitioners' motion for class certification be denied because Petitioners failed to meet the commonality requirements of Federal Rule of Civil Procedure 23(a). (Report and Recommendation (Dkt. # 97).) Specifically, the court concluded the common question presented by Petitioners and the proposed class was whether Respondents must release high-risk detainees, a question that would require individualized determinations based on the specific circumstances of each proposed class member. (*Id.*) Similarly, the court found Petitioners failed to meet the requirement for a uniform remedy under Rule 23(b)(2) due to the case-by-case considerations needed to determine whether release is appropriate for each proposed class member. (*Id.*) On September 25. 2020, the Honorable James L. Robart adopted the Report and Recommendation in part and denied Petitioners' motion for class certification, finding Petitioners failed to satisfy the requirements of Rule 23(b)(2) for an indivisible, uniform remedy that would provide relief to the proposed class.[2] (*See* Order Adopting Report and Recommendation in Part and Denying Petitioners' Motion.)

On November 4, 2020, Petitioners moved to amend their petition and complaint, seeking to modify their request for relief in response to the court's finding regarding the uniformity requirement of Rule 23(b)(2) and to remove Josue Castañeda Juarez as a Petitioner from this action because he was released from custody after succeeding in his immigration matter. (Dkt. # 132 at 4-6.) The court granted Petitioners' motion to amend (dkt. # 166) and Petitioners filed their amended petition and complaint. (Amend. Pet. (dkt. # 167).) Petitioners also filed the instant second motion for class certification. (*See generally* Mot.)

---

[2] Because the court adopted the Report and Recommendation's conclusion regarding Petitioners' failure to meet the requirements under Rule 23(b)(2), the court did not consider the Report and Recommendation's analysis regarding the commonality requirement of Rule 23(a)(2). (Order Adopting Report and Recommendation in Part and Denying Petitioners' Motion (Dkt. # 121) at 7.)

### B. Proposed Class

Petitioners' second motion seeks to certify the following class:

All individuals detained at the Northwest Detention Center who are age 55 years or older or have medical conditions that place them at heightened risk of severe illness or death from COVID-19 as determined by Centers for Disease Control and Prevention guidelines.

(Mot. at 2-3; Amend. Pet. at ¶ 66.) The amended petition lists the medical conditions designated by the CDC. (Amend Pet. at ¶ 66 n.24.) Petitioners again assert Respondents violated their Fifth Amendment rights by confining them at NWIPC in conditions that "amount to punishment and fail to ensure reasonable safety and health." (*Id.* at ¶¶ 94-98.) Petitioners seek the following relief on behalf of themselves and the proposed class: (1) an expedited bail process to consider release; (2) a declaration that conditions of confinement at NWIPC are unconstitutional under the Fifth Amendment; (3) issuance of a writ of habeas corpus or injunctive relief ordering release or placement in community-based alternatives; (4) imposition of a population cap of detainees at NWIPC to allow social distancing; and (5) imposition of periodic testing of detainees and NWIPC staff. (*Id.*, Prayer for Relief at (b)-(h).)

The factual allegations in this matter have been detailed in numerous pleadings, report and recommendations, and court orders. The undersigned briefly provides background regarding the named Petitioners and an update of Respondents' efforts to mitigate risk for current NWIPC detainees from COVID-19.

Mr. Khan, the only individually named Petitioner currently in custody, is a 47-year-old man from Pakistan. (First Khan Decl. (Dkt. # 9) at ¶ 1; Amend. Pet. at ¶ 13) He is detained and subject to removal based on his violation of a domestic violence no-contact order and criminal stalking of his ex-wife. (5/17/2020 Bostock Decl. (Dkt. # 63) at ¶ 78.) An Immigration Judge granted him cancellation of removal, and the Department of Homeland Security appealed the

1    decision. (*Id.*) The court sustained the appeal and Petitioner Khan has a pending petition for

2    review and temporary stay of removal. (Lippard Decl. (Dkt. # 104) at ¶ 106); *Khan v. Barr*, Case

3    No. 20-72191, Dkt. ## 1, 6 (9th Cir. 2020). Petitioner Khan has diabetes and Respondents have

4    determined he is "at heightened risk of severe illness and death upon contracting the COVID-19

5    virus." (Notice of Custody Determination pursuant to *Fraihat* (Dkt. # 176-9).) On December 1,

6    2020, ICE determined Petitioner Khan should remain in continued detention pursuant to its

7    Enforcement and Removal Operations' *COVID-19 Pandemic Response Requirements* ("ERO

8    PRR") standards. (Bostock Decl. (Dkt. # 182) at ¶ 76.)

9        Mr. Favela Avendaño is a 46-year-old man from Mexico. (Amend. Pet. at ¶ 11.)

10   Petitioner Favela Avendaño has asthma. (*Id.*) Petitioner Favela Avendaño has been released from

11   NWPIC. (Dkt. # 151-1.)

12       J.A.M is a 57-year-old man from El Salvador. (Amend. Pet. at ¶ 12.) J.A.M. has Type II

13   diabetes and his right lung does not function properly due to a previous gunshot injury. (*Id.*)

14   J.A.M. has been released from NWIPC. (Bostock Decl. (Dkt. # 63) at ¶ 79.)

15       ICE continues to update its response to the COVID-19 pandemic. ICE's ERO PRR was

16   recently updated in October 2020. (Lippard Decl. (Dkt. # 157) at ¶ 5.) The updates include, *inter*

17   *alia*, procedures in response to changes in the CDC's guidance and requirements imposed by

18   litigation in other jurisdictions, including, *Fraihat v. ICE*, 445 F.Supp.3d 709, 751 (C.D. Cal.

19   Apr. 20, 2020) (nationwide Preliminary Injunction), *Fraihat v. ICE*, __ F.Supp.3d __, 2020 WL

20   6541994 (C.D. Cal. Oct. 7, 2020) (clarifying order). (*Id.* at ¶¶ 3, 5, 8.) With regard to the new

21   guidance provided by *Fraihat*, ICE must notify detainees that it identifies as being potentially

22   higher risk of illness due to COVID-19 or as vulnerable. (*Id.* at ¶ 8.) Respondents have also

23   conducted custody redeterminations of detainees who qualify as *Fraihat* subclass members. (*Id.*)

1   ICE initially identified 156 detainees at NWIPC that qualified as members. (*Id.*) Of those

2   detainees, 33 were already removed from the United States and ICE released an additional 43

3   detainees based on custody redeterminations. (*Id.*) ICE represents that it will continue to conduct

4   custody redeterminations for all identified *Fraihat* class members. (*Id.*)

5           On December 23, 2020, ICE Health Services Corp.'s ("IHSC") adopted a prevalence

6   testing plan that requires performing COVID-19 testing twice per month of 20% of NWIPC's

7   detainees. (Malakhova Decl. (Dkt. # 202-1) at ¶ 3.) The plan calls for a "facility-wide and/or

8   dorm point prevalence survey" if any test results are positive. (*Id.*) The plan further requires

9   testing 20% of IHSC staff every two weeks. (*Id.*) In December 30, 2020, IHSC began

10  implementing prevalence testing. (*Id.* at ¶¶ 4-7.) During the first round of prevalence testing, 50

11  detainees were tested and had negative results. (Bostock Decl. (Dkt. # 207-1) at ¶ 13 n.2.) Five

12  detainees refused testing. (*Id.*) On January 13, 2021, IHSC completed another round of

13  prevalence testing. (Lippard Decl. (Dkt. # 208-1) at ¶ 8.) IHSC offered testing for 67 detainees.

14  (*Id.*) Of the detainees that were offered testing, 25 declined. (*Id.*) All test result were negative.

15  (*Id.*)

16              ### III.   DISCUSSION

17          **A. Legal Standard**

18          "Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores,*

19  *Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Federal Rule of Civil Procedure Rule 23(a), the

20  party seeking certification must first demonstrate that: "(1) the class is so numerous that joinder

21  of all members is impracticable; (2) there are questions of law or fact common to the class; (3)

22  the claims or defenses of the representative parties are typical of the claims or defenses of the

23

1  class; and (4) the representative parties will fairly and adequately protect the interests of the

2  class." Fed. R. Civ. P. 23(a).

3          After satisfying the Rule 23(a) requirements, "the proposed class must satisfy at least one

4  of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345; *see also Leyva v.*

5  *Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Petitioners seek to certify a class under

6  Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on

7  grounds that apply generally to the class, so that final injunctive relief or corresponding

8  declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule

9  23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to

10  each member of the class." *Dukes*, 564 U.S. at 360. Rule 23 "does not set forth a mere pleading

11  standard." *Id.* at 350. Rather, "certification is proper only if the trial court is satisfied, after a

12  rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-51 (internal

13  quotation omitted). "[I]t may be necessary for the court to probe behind the pleadings before

14  coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160

15  (1982). This is because "the class determination generally involves considerations that are

16  enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal

17  quotation omitted). Nonetheless, the ultimate decision regarding class certification "involve[s] a

18  significant element of discretion." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090

19  (9th Cir. 2010).

20          For the reasons set forth below, the undersigned concludes that the proposed class meets

21  the requirements of Rule 23(a) and Rule 23(b)(2). The undersigned therefore recommends that

22  class certification be GRANTED.

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

### B.   Rule 23(a) Certification Requirements

Respondents do not challenge Rule 23(a)'s requirements of numerosity and adequacy, and as the court previously found, Petitioners' arguments for these requirements are well-founded. (Report and Recommendation at 5.) Respondents instead challenge Rule 23(a)'s requirements for commonality and typicality. (Resp. at 8-14.) The court addresses each requirement below.

#### 1.     Commonality

The requirement of "commonality" is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 350. A contention is capable of class-wide resolution if "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "[W]hat matters to class certification. . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* This requirement is "construed permissively." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Accordingly, "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.*; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

Since the court issued its Report and Recommendation, there have been several developments that change the court's previous conclusion. First, Petitioners' amended petition and complaint seeks relief in the form of a uniform process to consider release for proposed class members as well as injunctive relief regarding improving conditions of confinement at NWIPC. Second, the Ninth Circuit issued its ruling in *Hernandez Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020), in which the court affirmed granting class certification for detainees based on Fifth

1    Amendment claims regarding their conditions of confinement during the current COVID-19

2    pandemic. Lastly, it appears Respondents have been able to successfully identify detainees who

3    are high-risk. Based on these recent developments, the court concludes Petitioners have met the

4    commonality requirement.

5         Respondents' opposition to Petitioners' instant motion reiterates many of their previously

6    asserted arguments. The court finds these arguments unpersuasive in light of the recent changes

7    listed above. Respondents argue the proposed class members have varying risk profiles regarding

8    COVID-19 based on age and pre-existing health conditions. (Resp. at 9.) Respondents therefore

9    argue the court will have to determine whether each detainee has an "increased risk" pursuant to

10   the CDC's criteria. (*Id.* at 9-10.) In support of their argument, Respondents cite to nuances in the

11   CDC's guidance regarding what conditions qualify individuals as high-risk. (*Id*. at 10.) As an

12   example, Respondents note the CDC places "asthma (moderate-severe)" in a lesser category of

13   conditions that might place individuals at an increased risk but does not define what constitutes

14   moderate or severe asthma. (*Id.*) Respondents assert the court will therefore have to determine

15   based on medical history whether detainees with asthma, such as Petitioner Favela Avendaño,

16   qualify as having an increased risk. (*Id.* at 10-11.)

17        Although the court previously had concerns regarding the need for individualized

18   assessments to determine which detainees qualify as high-risk, the record before the court

19   demonstrates Respondents have been able to identify potentially high-risk detainees and continue

20   to do so. This is evidenced by Respondents' identification of potentially higher risk detainees

21   due to COVID-19 and the custody redetermination of those individuals resulting in the release of

22   many detainees, including Petitioner Favela Avendaño. (*See generally* Lippard Decl.) The court

23

1  therefore finds the need to determine which detainees are considered high-risk does not

2  undermine commonality.

3          Respondents also argue commonality is absent because proposed class members are

4  detained pursuant to different statutory authority. (Resp. at 11.) They assert some detainees are

5  statutorily required to be detained and other detainees who may be released still require a

6  case-by-case determination regarding whether release is appropriate based on flight risk and

7  danger to the community. (*Id.*) Respondents also assert that despite the requested relief in the

8  amended petition and complaint, Petitioners continue to assert release is the only adequate

9  remedy to protect them from COVID-19 because social distancing is impossible at NWIPC. (*Id.*

10  (citing Amend. Pet. at ¶ 97 ("Even if ICE had meaningfully reduced numbers, strict social

11  distancing is impossible at NWDC, allowing COVID-19 to spread quickly once it arrives.").)

12  Respondents therefore argue there is no single common remedy for all detainees in the proposed

13  class because not all detainees may be released. (*Id.*)

14          The court finds Respondents' argument fails to account for the Ninth Circuit's ruling in

15  *Hernandez Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020).[3] In *Roman*, Plaintiffs brought a class

16  action on behalf of noncitizens detained at the Adelanto Immigration and Customs Enforcement

17  Processing Center ("Adelanto"). *See generally id.* Plaintiffs alleged Adelanto's failure to

18  implement protective measures during the current COVID-19 pandemic violated detainees' due

19  process rights under the Fifth Amendment. *Id.* at 939. The district court certified a class of all

20  detainees at Adelanto and granted a preliminary injunction requiring that Adelanto, *inter alia*,

21  require certain sanitation measures, comply with guidance issued by the CDC, and reduce its

22  population to enable social distancing. *Id.* The Ninth Circuit held the district court did not err by

23

---

[3] Respondents merely cite to *Roman* in a footnote and assert it is inapplicable because it involves different circumstances. (Resp. at 11 n.7.)

REPORT AND RECOMMENDATION - 10

1    provisionally certifying class, finding Plaintiffs' alleged due process violations exposed all

2    detainees to an unnecessary risk of harm. *Id.* at 944. The Ninth Circuit further found "[t]he

3    preliminary injunction afforded class-wide relief that would have remedied the constitutional

4    violations as to all detainees, even though it would have entailed the release or transfer of only

5    some of the detainees." *Id.*

6    The court finds *Roman* supports class certification in this action even if proposed class

7    members are detained pursuant to different statutory authority and may not all be subject to

8    release. Petitioners' amended petition and complaint seeks relief other than release, specifically

9    injunctive relief regarding the current conditions of confinement at NWIPC, such as the ability to

10   social distance, ability to maintain proper hygiene measures, screening of new detainees, and use

11   of personal protective equipment. (Mot. at 18-19.). The court notes language in the amended

12   petition and complaint suggests Petitioners still seek release for all proposed class members, (*see*

13   Amend. Pet. at ¶ 97 ("Defendants are aware of the serious risk posed by COVID-19 and are

14   failing to take the only action that can respond to Plaintiffs' medical needs, which is to release

15   Plaintiffs)), however, at this time, the court finds Petitioners have met the commonality

16   requirement in light of the newly requested relief and the Ninth Circuit's holding in *Roman*.

17   Other recent case law granting class certification where the relief sought concerns conditions

18   within the detention facility further supports this finding. *See, e.g., Zepeda Rivas, et al., v.*

19   *Jennings, et al.*, 445 F.Supp.3d 36 (N.D. Cal. Apr. 29, 2020); *Savino v. Souza*, 453 F.Supp.3d

20   441 (D. Mass. Apr. 8, 2020). Accordingly, the court finds Petitioners have met the requirements

21   for commonality.

22

23

REPORT AND RECOMMENDATION - 11

1          2.    *Typicality*

2       Typicality is satisfied if "the claims or defenses of the representative parties are typical of

3 the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality

4 requirement is to assure that the interest of the named representative aligns with the interests of

5 the class." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "The test of

6 typicality is whether other members have the same or similar injury, whether the action is based

7 on conduct which is not unique to the named plaintiffs, and whether other class members have

8 been injured by the same course of conduct." *Id.* (internal quotation marks omitted). "The

9 commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts

10 for determining whether under the particular circumstances maintenance of a class action is

11 economical and whether the named plaintiff's claim and the class claims are so interrelated that

12 the interests of the class members will be fairly and adequately protected in their absence."

13 *Dukes*, 564 U.S. at 350 n.5 (quoting *Falcon*, 457 U.S. at 157 n.13).

14       Petitioners argue they meet the typicality requirement because the proposed class

15 members are all confined under the same conditions at the NWIPC and their claims arise from

16 the same alleged failure to implement protective measures. (Mot. at 20.) Petitioners further assert

17 the proposed class members are subject to the same harm of serious illness or death if they are

18 not protected from COVID-19. (*Id.*)

19       Respondents argue the circumstances surrounding the named Petitioners' detention and

20 the circumstances surrounding proposed class members' detention are too different, including

21 varying statutory authority for detention, and therefore, fail to satisfy the typicality requirement.

22 (Resp. at 12.) Respondents cite to *Pimentel v. Asher*, No. 2:20-cv-00495-RSM-BAT, Dkt. 72

23 (W.D. Wash. May 22, 2020) in which the court acknowledged the individualized nature of the

1    petitioner's habeas corpus claim and considered the petitioner's specific circumstances in

2    converting the petitioner's motion for a temporary restraining order to preliminary injunction.

3    (*Id.*) Respondents assert the court would be required to make the same type of individualized

4    analysis raised in *Pimentel* in the instant action for each proposed member. (*Id.*) Respondents

5    also argue that although the petitioner was granted release in *Pimentel*, a number of other recent

6    cases addressing detention during the COVID-19 pandemic have denied release.[4] (*Id.* at 12-13.)

7         Here, the court finds Petitioners have met the typicality requirement. As noted above, the

8    commonality and typicality requirements often merge, and in this case, the reasons supporting

9    the commonality requirement also support the typicality requirement. Petitioners' claims concern

10   the conditions of confinement at NWIPC. The proposed class members are all confined at this

11   facility and are subject to the same alleged inadequate practices and procedures. Petitioners and

12   proposed class members therefore face the same risk of injury of serious illness or death due to

13   COVID-19. The court also finds the cases cited by Respondents do not address Rule 23(a)'s

14   typicality requirement. Rather, they generally address the merits of whether to grant habeas

15   petitions or related motions for temporary motions for release. The question of whether the

16   proposed class can prevail on the merits of its claim is not a proper inquiry in determining

17   whether common questions exist. *Stockwell v. City and Cty. Of S.F.*, 749 F.3d 1107, 1111-12

18   (9th Cir. 2014). The question before the court is whether Petitioners have sufficiently alleged that

19

20   ───────────────

21   [4] Citing *Murai v. Adducci*, No. 3:20- cv-10816-RHC-PTM, Dkt. 8 (E.D. Mich. April 16, 2020), *Saillant v. Hoover*, No. 1:20-cv-6090JPW, Dkt. 4 (M.D. Pa. April 16, 2020), *Albino-Martinez v. Adducci*, No. 2:20-cv-10893, 2020 WL 1872362 (E.D. Mich. April 14, 2020), *Ramirez v. Culley*, No. 2:20-cv-609, 2020 WL 1821305 (D. Nev. April 9, 2020), *Hassoun v. Searls*, --- F. Supp. 3d ---, 2020 WL 1819670 (W.D.N.Y. April 10, 2020), *Awshana v. Adducci*, --- F. Supp. 3d ---, 2020 WL 1808906 (E.D. Mich. April 9, 2020), *Saini v. Barr*, No. CV-20-649-PHX-JJT, ECF No. 24 (D. Ariz. April 9, 2020), *N.Z.M. v. Wolf*, No. 5:20-cv-24, Dkt. 20 (S.D. Tex. April 9, 2020), *Verma v. Doll*, No. 4:20-cv-14, 2020 WL 1814149 (M.D. Pa. April 9, 2020), *Umarbaev v. Lowe*, 1:20-cv-413 (M.D. Pa. April 9, 2020).

1   they suffered a similar injury to the proposed class members. Accordingly, the court finds

2   Petitioners have met the typicality requirement.

3        **C.   Rule 23(b)(2) Certification Requirements**

4        Certification under Rule 23(b)(2) requires uniformity of remedy. *See Dukes*, 564 U.S. at

5   360 (holding that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment

6   would provide relief to each member of the class. It does not authorize class certification when

7   each individual class member would be entitled to a different injunction or declaratory judgment

8   against the defendant."). Consequently, a court may only certify a class that is entitled to an

9   "indivisible" remedy. *Id.*

10       Respondents argue that despite the changes in Petitioners' requested relief, their core

11   allegations are the same as their original petition. (Resp. at 14-15.) Specifically, Respondents cite

12   Petitioners' assertion that "[b]ecause risk mitigation at NWDC is impossible, the only effective

13   remedy for the unconstitutional conditions to which Plaintiffs and the proposed class are being

14   subjected to is release from the detention center." (*Id.* at 14 (citing Amend. Pet. at ¶ 81).)

15   Respondents therefore argue the remedy sought is not common to the proposed class because

16   individualized determinations would be required for each proposed class member. (*Id.* at 15.)

17       Here, the undersigned finds Petitioners' amended petition and complaint seeks a uniform

18   remedy pursuant to Rule 23(b)(2). As discussed above, recent developments alter the court's

19   previous conclusion. Significantly, Petitioners now seek injunctive relief regarding the

20   conditions of confinement at NWIPC and a process to consider if release is appropriate for

21   proposed class members, as opposed to release. This is supported by the Ninth Circuit's finding

22   in *Roman* that petitioners who requested similar relief for a putative class met the uniform

23   remedy requirement. 977 F.3d at 944.

Because an injunctive or declaratory judgment would apply to all class members, Petitioners have met the requirements of Rule 23(b)(2)'s uniformity of remedy. Accordingly, this court finds that class certification is warranted.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Petitioners' second motion for class certification (dkt. # 134) be GRANTED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on February 4, 2021.

Dated this 20th day of January, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15