UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSUE CASTANEDA JUAREZ, *et al.*,

            Petitioners,

   v.

NATHALIE ASHER, *et al.*,

            Respondents.

Case No. C20-700 JLR-MLP

ORDER

## I. INTRODUCTION

This matter is before the Court on Respondent Langford's motion for summary judgment (Resp.'s Mot. Summ. J. (dkt. # 239)) and Petitioners' cross motion for summary judgment (Pet.s' Cross Mot. Summ. J. (dkt. # 252)). Petitioners included in their cross motion for summary judgment a response to Respondent's summary judgment motion (*id.*), and Respondent submitted a reply in support of his motion (Resp.'s Reply (dkt. # 273)). Respondent submitted a response to Petitioners' summary judgment motion (Resp.'s Resp. (dkt. # 264), and Petitioners submitted a reply in support of their motion (Pet.s' Reply (dkt. # 276)). Having considered the parties' submissions, the balance of the record, and the governing law, the Court defers ruling on the pending motions for summary judgment.

ORDER - 1

## II. BACKGROUND

Petitioners are individuals either currently or previously held in civil detention by United States Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioners brought this action in May 2020, arguing they are "vulnerable to serious medical complications from COVID-19 and are at risk of serious illness and death so long as they are held in detention" due to their medical conditions. (Dkt. # 1 at ¶ 95.) Petitioners sought release. (*Id.* at ¶ 82.) Petitioners subsequently amended their petition, modifying their requested relief to include, *inter alia*, periodic testing for COVID-19 and limiting the number of detainees held at NWIPC. (Am. Pet. (Dkt. # 167) at ¶ 8.)

The Court initially limited discovery and directed the parties to submit proposed discovery requests. (Dkt. # 124.) The Court granted in part and denied in part Petitioners' requests, narrowing discovery to only matters concerning Petitioner Kahn, the only Petitioner confined at NWIPC at that time. (Dkt. # 160.) The Court subsequently granted class certification and expanded the scope of discovery to matters concerning all class members and extended the discovery deadline by 90 days. (Dkt. ## 245, 272.)

Respondent Langford, former Warden at NWIPC and employee of the private prison corporation GEO Group, Inc. ("GEO"), submitted a motion for summary judgment asserting he is not a proper party and is no longer employed at NWIPC. (Resp.'s Mot. Summ. J. at 3; Resp.'s Reply at 3.) Respondent Langford also asserts the Court has no jurisdiction to compel testing or immunization of GEO employees. (Resp.'s Mot. Summ. J. at 4.) Lastly, Respondent Langford asserts Petitioners failed to plead any viable cause of action against him. (*Id.* at 6.)

Petitioners filed a cross motion for summary judgment, arguing the Court should order periodic testing of GEO staff until COVID-19 no longer poses a threat to Petitioners. (*See*

ORDER - 2

*generally* Pet.s' Cross Mot. Summ. J.) In the alternative, Petitioners request the Court deny or defer a decision on summary judgment to allow for further discovery. (*Id*. at 16-22.) Petitioners request that if the Court defers its ruling, it address the legal question of whether Petitioners may sue the NWIPC Warden for injunctive relief. (Pet.'s Reply at 10-11.) They assert this will clarify whether they are entitled to obtain discovery from the NWIPC Warden.

### III. DISCUSSION

**A. Motion for Summary Judgment**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must

present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). In addition, it is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

**B. Rule 56(d)**

Rule 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1000 (9th Cir. 2002). "To prevail under this Rule, parties opposing a motion for summary judgment must make '(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.'" *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox,* 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.,* 784 F.2d 1472, 1475 (9th Cir. 1986)).

A Rule 56(d) "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Burlington N. Santa Fe R.R. Co. v. The Assiniboine & Sioux Tribes of the Fort Peck Reservation,* 323 F.3d 767, 773-74 (9th Cir. 2003) (internal quotation marks and citations omitted); *see also Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th

Cir. 2001) ("Although Rule 56(f)[1] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986)) (footnote added))).

Petitioners argue the Court should defer its ruling to allow the parties to conduct discovery regarding Respondents' implementation of COVID-19 protocols at NWIPC. (Pet.s' Cross Mot. Summ. J. at 17.) Petitioners argue discovery is needed for several issues that are essential to their claims, including Respondents' vaccination plans, capacity to test for and respond to COVID-19, implementation of COVID-19 PRR, communication regarding positive COVID-19 cases, response to staff who fail to abide by COVID-19 protocols, compliance with COVID-19 protocols, and custody determinations. (*Id.* at 17-18.) Petitioners also seek to conduct a Rule 30(b)(6) deposition of ICE and GEO and conduct a second facility inspection of NWIPC to observe the conditions of confinement as they pertain to all class members. (*Id.* at 18.) Petitioners argue this additional discovery is necessary as discovery was previously limited to only Petitioner Kahn. (*Id.* at 22.)

In support of their request, Petitioners submitted a declaration outlining the discovery they seek that was contained in their proposed discovery requests that were denied, and the reasons why they believe this information exists. (Kuhlik Decl. (Dkt. # 254).) Specifically, Petitioners assert that before the Court denied their requests, Respondents initially stated

---

[1] Effective December 1, 2010, Federal Rule of Civil Procedure 56(f) has been renumbered 56(d). The advisory committee's notes to Rule 56 with regard to the 2010 amendments state that "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's notes.

ORDER - 5

responsive documents existed, including emails and records. (*See, e.g., id.* at ¶¶ 25, 30, 34, 38, 46.) Petitioners further assert they have been diligent in seeking discovery, citing their previous discovery requests and efforts to expand the scope of discovery. (*Id.* at 20.)

Respondent Langford asserts Petitioners have not specifically identified what information they seek or why they believe Respondent Langford has the ability to control COVID-19 at NWIPC. (Resp.'s Reply at 5.) Specifically, he asserts that because Petitioners seek release, this is not a conditions of confinement action, and he has no control over Petitioners' custody. (*Id.* at 4.) Despite asserting this is not a conditions of confinement case, Respondent Langford also argues ICE, not GEO, controls Petitioners' conditions of confinement. (*Id.*) He further asserts he has no access to the requested discovery because he no longer works at NWIPC. (*Id.* at 5-6.)

Here, the Court finds Petitioners have met the requirements of Rule 56(d). Petitioners have laid out the specific discovery they seek, in both their motion and supporting declaration, and have provided a basis for why this information exists. In addition, Petitioners seek relief regarding their conditions of confinement other than release, such as decreasing the detainee population and conducting periodic testing of staff, conditions which are at the center of the pending motions for summary judgment. Petitioners should be given sufficient time to develop evidence that is directly related to their claims, especially because the scope of discovery has expanded drastically in this matter due to class certification. Further, as previously found by the Court, Petitioners have been diligent in their pursuit of discovery. And, although Respondent Langford is no longer working at NWIPC and asserts he has no access to discovery, the current NWIPC Warden presumably does. As discussed below, the current NWIPC Warden may be substituted for Respondent Langford and Petitioners may therefore maintain this action against the NWIPC Warden.

## C. Proper Respondent

Next the Court turns to Petitioners' request that the Court determine whether the NWIPC Warden may be sued for injunctive relief in this matter. Respondent Langford presents several arguments as to why Petitioners cannot maintain this action against him. He first argues that the warden of NWIPC is not a proper party because this is a habeas matter. (Resp.'s Mot. Summ. J. at 3.) He asserts that in such matters, the proper party is the custodian who is the person with the ability to produce the detainee's body before the habeas court. (*Id.*) Respondent Langford asserts that as a warden, he does not have legal control over Petitioners, or the ability to release them, and therefore cannot be the custodian. (*Id.*) He asserts that with regard to COVID-19-related habeas matters, the proper party is the federal official most responsible for overseeing the contract facility. (*Id.* 3-4.) Respondent Langford argues this is ICE's responsibility and thus ICE is the proper custodian. (*Id.* at 6.) He further argues that because Petitioners have not identified any authority allowing a warden of a private detention facility to be named as a party in a habeas action, he must be dismissed from this action. (Resp.'s Reply at 3.)

Similarly, Respondent Langford asserts that he and other GEO employees cannot be sued on the grounds that Petitioners' confinement violates their Fifth Amendment Due Process rights or other Constitutional provisions because GEO employees do not have the authority to release Petitioners and thus cannot provide Petitioners the relief they seek. (*Id.* at 3; Resp.'s Mot. Summ. J. at 6.)

Respondent Langford also asserts that he is not a proper party because he is no longer employed at NWIPC and that Petitioners cannot substitute the current Warden of NWIPC as a named party. (Resp.'s Mot. Summ. J. at 2; Resp.'s Reply at 7.) He asserts Rule 25(d), which allows substitution under specific conditions including in the event of a public officer's

separation from the office, is inapplicable because he is not a public officer and the office of the warden is not a public office. (*Id.*) However, he cites no authority in support of this assertion. He also asserts that Petitioners' reliance on *Marshall v. Hudson*, 807 F. App'x 743 (10th Cir. 2020), a case in which the current warden of a private detention facility was substituted for the former warden pursuant to Rule 25(d), is misplaced because the substitution there was only mentioned in a footnote and the court did not discuss the merits of the substitution. (*Id.*)

Here, the Court finds the NWIPC Warden may be sued for injunctive relief. As an initial matter, Respondent Langford mischaracterizes Petitioners' claims. Although he repeatedly asserts this is a habeas action, the Court has already found that Petitioners also seek injunctive and declaratory relief. (Dkt. # 272 at 4-6.) Respondent Langford also incorrectly asserts that Petitioners only seek release and that this is not a conditions of confinement case. As discussed above, Petitioners specifically seek injunctive relief with regard to their conditions of confinement, such as periodic testing.

The Court also finds Petitioners have alleged a cause of action through which they can seek injunctive relief. Courts have long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation. *See Sierra Club v. Trump*, 963 F.3d 874, 888 (9th Cir. 2020) ("Certain provisions of the Constitution give rise to equitable causes of action.") (citing cases), *petition for cert. filed* (U.S. Aug. 7, 2020) (No. 20-138). Further, courts have found an implied cause of action exists for plaintiffs to challenge allegedly unconstitutional conditions of confinement. *Hernandez Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020); *see also Ziglar v. Abbasi*, —— U.S. ——, 137 S. Ct. 1843, 1862–63 (2017) (noting that, apart from relief pursuant to *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971) or habeas relief, noncitizen detainees could seek injunctive relief to challenge their conditions of confinement).

With regard to actions against private contractors who are custodians of federal detainees, courts have found they may be sued for constitutional violations. In *Correctional Services Corp. v. Malesko*, the Court found a detainee held in a private facility had access to injunctive actions in federal court. 534 U.S. 61, 74 (2001). The Ninth Circuit has recently recognized that petitioners may seek both habeas and injunctive relief relating to conditions of confinement in similar class actions relating to COVID-19. In those cases, the Ninth Circuit allowed petitioners to sue private detention facilities for alleged constitutional violations concerning those conditions, just as Petitioners have done. *See Zepeda Rivas v. Jennings*, ⎯⎯ Fed. Appx. ⎯⎯, 2021 WL 631805 (9th Cir. Feb. 18, 2021); *Hernandez Roman*, 977 F.3d 935. As noted by Petitioners, the warden of the private facility in *Hernandez Roman* was a named Defendant. 977 F.3d at 938 n.1.

Respondent Langford attempts to distinguish *Hernandez Roman*, arguing that this Court has already found the conditions at the facility in that case were substantially different than those at NWIPC. (Resp.'s Reply at 6.) He also asserts there is no dispositive ruling from that case that is controlling in this action. (*Id.*) Specifically, Respondent Langford asserts there is no ruling regarding whether injunctive relief is available to mandate COVID-19 testing of GEO employees when the named party is the former warden, not a current employee. (*Id.*)

Although this Court has previously found the conditions of confinement at NWIPC distinguishable from those in *Hernandez Roman*, the question before the Court at this time is only whether Petitioners may sue the NWIPC Warden. Thus, the Court need not consider or compare the factual differences between the facilities, or the types of injunctive relief sought

regarding those conditions. The Court finds the Ninth Circuit cases cited above and cases cited by Petitioners regarding the availability of injunctive relief persuasive. (Pet.s' Mot. Summ. J. at 4-5 (citing, *e.g.*, *Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1057 (C.D. Cal. 2019); *see also, e.g.*, *Picone v. U.S. Marshal Serv.*, No. C15-2033, 2016 WL 5118303, at *4 (N.D. Ohio Sept. 21, 2016) (injunctive relief available against private prison employees); *Montes v. McAdam*, No. C14-005-C, 2014 WL 5454843, at *2 (N.D. Tex. Oct. 27, 2014) ("An inmate incarcerated at a private prison, such as Dalby Facility, may seek remedial action in federal court via an action for injunctive relief." (citing *Malesko*, 534 U.S. at 74)).) Further, as explained below, the NWIPC Warden may be sued regardless of the fact that Respondent Langford no longer works at NWIPC.

Lastly, the Court finds the current NWIPC Warden may be properly substituted as a party in this matter. Petitioners argue substitution is permitted pursuant to Rule 25(d) that provides, in relevant part, "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." (*Id.* at 5-6.) Specifically, they assert that because they sued Respondent Langford in his official capacity, he is a public officer and the office of the warden is a public office. (*Id.* at 6-7.) They also direct the Court to the Supreme Court's explanation that when an official is sued in their official capacity, the real party in interest is the governmental entity, not the official (*id.* (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991))), and the Ninth Circuit's rejection of the notion of allowing the government to circumvent its constitutional duties by contracting with private actors to perform some of its work (*id.* (citing *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 753 (9th Cir. 2020))). The Court agrees, and accordingly, is persuaded that Respondent Langford may be considered a

public officer and that the office of the warden be considered a public office for purposes of substitution. Accordingly, the current NWIPC Warden can be sued for injunctive relief.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court defers ruling on the parties' motions for summary judgment. The Court strikes the pending motions without prejudice to the parties refiling the motions after the close of discovery. (Dkt. ## 239, 252.) The Court orders the current NWIPC Warden be substituted for Respondent Langford. The Clerk is directed to send copies of this Order to all counsel of record and to the Honorable James L. Robart.

Dated this 14th day of May, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[2] Respondent Langford also appears to imply that it is too late to substitute the current NWIPC Warden pursuant to Rule 25(d), asserting substitution "must occur within six months." (Resp.'s Reply at 7 (emphasis in original).) However, he presents no argument or authority to support the assertion that substitution would be untimely. Pursuant to Rule 25(d), substitution is automatic, and the court may order substitution at any time.